UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RYAN H.,[1]

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

DECISION & ORDER

20-CV-6035MWP

**PRELIMINARY STATEMENT**

        Plaintiff Ryan H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI") and Disabled Adult Child ("DAC") benefits. Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 8, 13). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

"The Social Security Act provides disability insurance benefits for disabled, adult children 'on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died' if the claimant is 18 years old or older and has a disability that began before he or she reached the age of 22." *Thiboult v. Comm'r of Soc. Sec.*, 2019 WL 7183419, *3 (W.D.N.Y. 2019) (quoting 20 C.F.R. § 404.350); *see also* 42 U.S.C. § 402(d). "In the context of determining eligibility for disabled adult child's benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases." *Id.* (quoting *Doerr v. Colvin*, 2014 WL 4057446, *3 (W.D.N.Y. 2014)). DAC claims are also adjudicated under the same five-step sequential process detailed above. *See Heather R. v. Comm'r of Soc. Sec.*, 2021 WL 671601, *2 (W.D.N.Y. 2021); *Thiboult v. Comm'r of Soc. Sec.*, 2019 WL 7183419 at *3.

## II.   The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 14, 2015, the alleged onset date. (Tr. 17).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: history of learning disability, depression, anxiety, schizophrenia, psychotic disorder, spina bifida, hearing loss,

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

4

obesity, history of right wrist fracture, and history of right orbital fracture. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 17-19).

The ALJ concluded that plaintiff retained the RFC to perform light work but with several additional limitations. (Tr. 19). Specifically, plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds, but could not lift and carry more than five pounds with his right dominant hand; could not climb ropes, ladders, or scaffolds; could frequently, but not constantly, finger; could frequently handle with his right dominant hand; could frequently stoop, crouch, balance, climb stairs or ramps, kneel, and crawl; could perform simple tasks, adjust to occasional changes in a work setting, and make simple work-related decisions; could fulfill daily quotas or expectations, but could not maintain a fast-paced, automated, production line pace; required three less-than-five-minute breaks in addition to regularly scheduled breaks; and, could occasionally interact with the public, but could not perform tandem or team work. (Tr. 19-20). At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 25). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as copy machine operator, linen grader, and collator operator. (Tr. 26). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 26-27).

### III.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 8, 15). First, plaintiff argues that the ALJ's consideration of the medical opinion of his treating primary care

physician, Lishan Walker, MD, violated the treating physician rule.  (Docket # 8-1 at 10-13). Second, plaintiff maintains that the mental portion of the ALJ's RFC determination is not supported by substantial evidence.  (*Id.* at 13-16).

IV.    **Analysis**

    A.    **The ALJ's Consideration of Dr. Walker's Medical Opinion**

I turn first to plaintiff's contention that the ALJ violated the treating physician rule in considering Dr. Walker's medical opinion.  (*Id.* at 10-13).  Specifically, plaintiff maintains that the ALJ "rejected all of Dr. Walker's more restrictive limitations" without providing the requisite "good reasons" for doing so.  (*Id.* at 12).  For the reasons explained below, I find that the ALJ failed to adequately explain why she rejected Dr. Walker's opined time off-task and absentee rate, and that remand is warranted on this basis.

An ALJ should consider "all medical opinions received regarding the claimant." *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)[3]).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating

---

[3] This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c, 416.920c apply.

physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider the "*Burgess* factors":

> (1) the frequency of examination and length, nature, and extent of the treatment relationship,
>
> (2) the amount of medical evidence supporting the opinion,
>
> (3) the consistency of the opinion with the record as a whole,
>
> (4) whether the opinion is from a specialist, and
>
> (5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . [s]econd, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good

7

reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted).  "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

On August 21, 2018, Dr. Walker completed a "Treating Medical Source Statement (Physical and Mental)."  (Tr. 676-81).  Dr. Walker indicated that she had been treating plaintiff for one year and generally saw him once every three months; she diagnosed him with fracture of the scaphoid bone with non-union, which caused right hand pain, decreased range of motion, and decreased grip strength, and anxiety and depression, which caused fluctuations in his mood.  (Tr. 676).  In Dr. Walker's view, plaintiff could engage in full-time competitive employment on a sustained basis but "may be limited with the use of his right hand [and] may require frequent follow ups with his mental health provider."  (*Id.*).  Dr. Walker noted that emotional factors contributed to the severity of plaintiff's limitations and symptoms, which included anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and generalized persistent anxiety.  (Tr. 677).

Dr. Walker also opined on plaintiff's mental ability to "function independently, appropriately, effectively and on a[] sustained, consistent, useful and routine basis, without direct supervision or undue interruptions or distractions . . . in a regular, competitive work setting for more than six consecutive months." (*Id.*). In this respect, Dr. Walker opined that plaintiff did not have limitations with understanding and memory. (Tr. 678). Dr. Walker opined, however, that plaintiff did have certain functional limitations, namely, that, for a period of less than 10% of an eight-hour workday, he could not maintain attention for two-hour segments, complete a normal workday and workweek without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, or get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and that, for a period of between 11% to 20% of an eight-hour workday, he could not travel to unfamiliar places, use public transportation, or deal with normal work stress because those activities may trigger worsening anxiety, and could not perform at a consistent pace without an unreasonable number and length of rest periods because he may be limited by his right-hand pain. (*Id.*).

With respect to plaintiff's physical functional abilities in a competitive work situation, Dr. Walker opined that he could walk more than five city blocks without needing to rest or feeling severe pain, could sit and stand for longer than ninety minutes at one time before needing to change positions, and could sit and stand/walk for at least six hours total in an eight-hour workday. (Tr. 679). According to Dr. Walker, plaintiff would sometimes need unscheduled breaks during the workday as often as once every two hours for fifteen minutes. (*Id.*). Dr. Walker also opined that plaintiff could occasionally lift and carry up to ten pounds, but could never lift and carry twenty pounds or greater, had significant limitations with reaching, handling, and fingering (which were worse with his right hand than the left), and could

9

frequently stoop/bend and crouch/squat, occasionally twist and climb stairs, but could rarely climb ladders. (Tr. 679-80). Finally, Dr. Walker indicated that plaintiff would be off-task or otherwise unproductive for 15% of a normal workday/workweek and would likely be absent from work an average of two days per month due to pain flareups or appointments with doctors. (Tr. 680).

The ALJ afforded this opinion "some weight" based on Dr. Walker's "treating relationship with [plaintiff]." (Tr. 23). In doing so, the ALJ reasoned:

> Although a ten-pound lifting restriction is not warranted by [plaintiff's] physical impairments, a restriction to light exertion is supported. In addition, Dr. Walker described an absentee rate and off-task time that is not supported by the evidence. The aspects of the opinion that are consistent with treatment notes are better supported, and more persuasive. Much of Dr. Walker's assessment indicated that [plaintiff] was not totally disabled. [(Tr. 699)].

(Tr. 23-24). As mentioned above, plaintiff argues that the ALJ failed to provide "good reasons" for "reject[ing] all of Dr. Walker's more restrictive limitations." (Docket # 8-1 at 12). The Commissioner counters that the ALJ incorporated many aspects of Dr. Walker's opinion and otherwise adequately explained her decision not to adopt the opinion in its entirety. (Docket # 13-1 at 8-14).

As an initial matter, despite assigning Dr. Walker's opinion "some weight," I agree with the Commissioner that the ALJ in fact accounted for the majority of Dr. Walker's opined limitations. *See Mathews v. Comm'r of Soc. Sec.*, 2020 WL 4352620, *8 n.10 (W.D.N.Y. 2020) ("[i]rrespective of the terminology used by the ALJ, whether it be 'great weight,' 'little weight,' 'some weight,' or 'no weight,' the relevant inquiry is whether the ALJ in fact incorporates or accounts for the limitations assessed by the medical professional in the RFC, as opposed to basing the RFC upon his or her own lay interpretation of the medical evidence"). By

limiting plaintiff to light work, the ALJ credited Dr. Walker's opinion that plaintiff could sit and stand for over ninety minutes at one time without needing to switch positions and could sit and walk/stand for at least six hours in an eight-hour workday. (*See* Tr. 19, 679). The ALJ also accommodated Dr. Walker's opinion that, due to pain caused by his right-hand impairment, plaintiff would be limited in his ability to perform at a consistent pace without an unreasonable number and length of rest periods and would need an unscheduled break once every two hours; indeed, the ALJ precluded plaintiff from fast-paced, automated, production-line work, found that plaintiff needed three short breaks in addition to regularly scheduled breaks, and also limited plaintiff to lifting and carrying no more than five pounds with his right dominant hand. (*See* Tr. 19-20, 678-79). Furthermore, the ALJ accounted for Dr. Walker's postural limitations by precluding plaintiff from climbing ropes, ladders, or scaffolds, and limiting him to frequent stooping, crouching, balancing, climbing of stairs and ramps, kneeling, and crawling. (*See* Tr. 19, 680). In addition, the ALJ accommodated plaintiff's finger and handling restrictions by limiting him to frequent but not constant fingering, as well as to frequent handling with his right hand. (*See id.*). Moreover, the ALJ's determination that plaintiff could adjust to occasional changes in a work setting was consistent with Dr. Walker's view that plaintiff was not at all limited in responding appropriately to changes in a routine work setting but was limited in traveling to unfamiliar places. (*See* Tr. 19, 678). Finally, the ALJ accounted for Dr. Walker's opinion that plaintiff was limited in his ability to deal with normal work stress by limiting plaintiff to, among other things, simple tasks, simple work-related decisions, only occasional interaction with the public, and no work involving tandem or teamwork (*see* Tr. 19-20, 678), particularly where, as the ALJ acknowledged, some of plaintiff's mental health impairments stemmed from his "significant social anxiety" (Tr. 19; *see also* Tr. 43-44, 56, 61). Plaintiff thus

11

overstates his position that the ALJ "rejected *all* of Dr. Walker's more restrictive limitations." (Docket # 8-1 at 12 (emphasis supplied)).

That said, having reviewed the record, the ALJ's decision, and Dr. Walker's opinion, I agree with plaintiff that the ALJ's statement that Dr. Walker's opined time off-task and absentee rate were "not supported by the evidence" (Tr. 23) is too conclusory to satisfy the treating physician rule.[4] The ALJ did not cite any evidence contradicting that portion of Dr. Walker's opinion. The ALJ's single conclusory statement that Dr. Walker's opined limitations were "not supported by the evidence" does not "identify[] the alleged inconsistencies in the record" and thus "fail[s] to provide any basis for rejecting" the treating physician's opined time off-task and absentee rate and, in my view, does not constitute a "good reason" for rejecting that portion of Dr. Walker's opinion. *Erb v. Colvin,* 2015 WL 5440699, *12, 14 (W.D.N.Y. 2015) ("the ALJ's statement that the rejected opinions were 'inconsistent with the record as a whole' is too conclusory to constitute a 'good reason' to reject the treating [doctor's] opinions"); *see also Marchetti v. Colvin*, 2014 WL 7359158, *13 (E.D.N.Y. 2014) ("[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on . . . conclusory assertions of inconsistency with the medical record") (collecting cases); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's opinion was

---

[4] The ALJ also discounted Dr. Walker's opinion that plaintiff could not lift or carry twenty pounds or more. As to this conclusion, I find that the ALJ identified sufficient evidence throughout her decision to support her determination that this opined limitation was "not warranted by [plaintiff's] physical impairments." (Tr. 23). Specifically, the ALJ noted that plaintiff had chronic back pain associated with spina bifida – which the ALJ found to be a severe impairment at step two (Tr. 17) – but she also noted that plaintiff's physical examinations revealed only tenderness (Tr. 21 (citing Tr. 391, 559)), and that plaintiff's treatment for his back pain, consisting of home exercises and NSAIDs, was "generally . . . conservative" (*id.* (citing Tr. 392)). The ALJ also referenced the June 13, 2016 internal medicine examination completed by consultative examiner Rita Figueroa, MD, who noted plaintiff's diagnosis of lumbago and that plaintiff's lumbar spine x-rays revealed straightening, but also that plaintiff's physical examination demonstrated that he had full strength in his upper and lower extremities and full grip strength. (Tr. 21, 24 (citing Tr. 404-408)). As the ALJ recognized, Dr. Figueroa opined, among other things, that plaintiff only had "mild" limitations regarding his ability to repetitively bend, lift, and carry. (Tr. 24 (citing Tr. 407)). On this record, I find that the ALJ provided "good reasons" for discounting this portion of Dr. Walker's opinion and that her decision to do so is supported by substantial evidence.

"inconsistent with the evidence and record as a whole" was "simply not the 'overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion'") (quoting *Velazquez v. Barnhart*, 2004 WL 367614, *10 (D. Conn. 2004)).

The Commissioner contends that the ALJ relied upon plaintiff's activities of daily living to reject Dr. Walker's assessed limitations regarding plaintiff's time off-task and absentee rate. (*See* Docket # 13-1 at 13-14). To be sure, at various points in her decision, the ALJ noted that while plaintiff's reported functioning was consistent with some limitations, his ability to perform certain activities did not support a finding of disability. (*See* Tr. 19 (finding at step three that plaintiff had a "moderate limitation" with regard to concentrating, persisting, or maintaining pace, explaining that while the record demonstrated plaintiff had difficulty in this area of functioning, he "[n]evertheless . . . c[ould] drive, go to the movies, and engage[] in other activities that require some ability to attend to tasks"); Tr. 24 (finding that the opinion of consultative psychologist Kristina Luna, PsyD, that plaintiff's "psychiatric problems would not interfere with his ability to function on a daily basis" was "consistent with [plaintiff's] activities," such as his ability to "clean, do laundry, and drive"); Tr. 25 ("[plaintiff] has impairments, but the record does not support a finding that [his] impairments are disabling[;] [plaintiff] engages in daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations[;] [plaintiff] is able to care for his own personal hygiene and take medication with reminders[;] [h]is daily chores include vacuuming and cleaning the dishes[;] [plaintiff] does not cook or handle money, but he is able to drive[;] [h]e interacts with family members and one friend[;] [plaintiff] reads Harry Potter books for pleasure")). Of course, none of the above-noted evidence is explicitly cited as support for the ALJ's decision to reject this portion of Dr. Walker's opinion. (*See* Tr. 23). Even assuming that

13

the ALJ did rely on the identified activities of daily living, the ALJ failed to explain how that evidence contradicts Dr. Walker's opined time off-task or absentee rate. *See*, *e.g.*, *David E. v. Saul*, 2021 WL 1439668, *4-5 (N.D.N.Y. 2021) ("[t]he [c]ourt does not find that the ALJ's brief discussion of [p]laintiff's activities of daily living [including his ability to care for pets and a girlfriend, regularly attend appointments, do chores around the house, drive, go to the store once a week, and use the internet for Facebook] constitutes sufficiently 'good reasons' for assigning reduced weight to the opinion [of plaintiff's treating physician], and a searching review of the record does not assure the [c]ourt that the substance of the treating physician rule was not traversed"); *Patrick M. v. Saul*, 2019 WL 4071780, *10 (N.D.N.Y. 2019) ("[t]he [p]laintiff's ability to attend medical appointments and engage in other daily activities of limited duration do not correlate to the [p]laintiff's ability to stay on-task during an eight-hour work day or the likelihood that he would miss work several days per month because of exacerbation of his [impairments]"). Thus, I do not find under the circumstances of this case that plaintiff's activities of daily living, standing alone, constitute "good reasons" to reject Dr. Walker's assessed limitations.

In reaching this conclusion, I recognize that "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and there is "no absolute bar to crediting only portions of medical source opinions," *Younes v. Colvin*, 2015 WL 1524417, *8 (N.D.N.Y. 2015). Where the ALJ's "RFC assessment conflicts with an opinion from a medical source, [however,] the adjudicator must explain why the opinion was not adopted." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184,

\*7 (1996)).  In other words, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions.  *See Younes v. Colvin*, 2015 WL 1524417 at \*8 (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighting portions of the same-source opinions differently"); *Phelps v. Colvin*, 2014 WL 122189, \*4 (W.D.N.Y. 2014) ("[t]he selective adoption of only the least supportive portions of a medical source's statements is not permissible") (internal quotations and brackets omitted); *Caternolo v. Astrue*, 2013 WL 1819264, \*9 (W.D.N.Y. 2013) ("[i]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination") (internal quotations omitted) (collecting cases); *Searles v. Astrue*, 2010 WL 2998676, \*4 (W.D.N.Y. 2010) ("[a]n ALJ may not credit some of a doctor's findings while ignoring other significant deficits that the doctor identified").

Here, contrary to the ALJ's statement that the "record does not contain any opinions . . . indicating that [plaintiff] is disabled or even has greater limitations than those determined in [her] decision" (Tr. 25), the ALJ's RFC determination in fact conflicts with Dr. Walker's opined time off-task and absentee rate.  Critically, the vocational expert testified at the administrative hearing that an individual who is off-task 15% of the time and absent from work two days per month – as Dr. Walker opined plaintiff would be – cannot work.  (*See* Tr. 86 (vocational expert stating that such a combination would "rule out work")).  Given this testimony, Dr. Walker's opined time off-task and absentee rate, if credited, would have resulted in a finding that plaintiff was disabled.  Thus, the Court cannot say that the ALJ's inadequate explanation for rejecting these specific limitations is harmless.  *See*, *e.g.*, *Lesterhuis v. Colvin*,

805 F.3d 83, 88 (2d Cir. 2015) ("[b]ased on [vocational expert's] uncontroverted testimony, [treating physician's] conclusion that [plaintiff] would likely miss more than four days of work per month would, if credited, suffice on its own to support a determination of disability"); *Narvaez v. Comm'r of Soc. Sec. Admin.*, 2019 WL 4386030, *12 (S.D.N.Y. 2019) ("[h]ere, as in other similar cases, the ALJ's failure to provide good reasons for discounting [treating physician's] opinion regarding [plaintiff's] likely rate of absenteeism is 'all the more troubling' because the [vocational expert's] testimony that absences in excess of one per month would render [plaintiff] unable to engage in competitive work[;] . . . [t]hus, the [c]ourt cannot find that the error was harmless") (collecting cases). Accordingly, remand for a more adequate explanation of the ALJ's reasoning is especially appropriate because the ALJ incorporated many aspects of Dr. Walker's opinion, but rejected specific limitations that may have led to a finding of disability.[5] *See Beckers v. Colvin*, 38 F. Supp. 3d 362, 372 (W.D.N.Y. 2014) ("in rejecting the portion of [medical source's] opinion stating that [p]laintiff would miss two or three days of work per month, the ALJ stated only that he gave little weight to that opinion[;] . . . [t]he ALJ failed to explain why he would adopt [the medical source's] opinions concerning [p]laintiff's marked limitations but reject her opinion that would likely lead to a finding of disability"); *Henkle v. Colvin*, 2014 WL 880370, *4 (E.D. Cal. 2014) ("the court is persuaded by the fact that the ALJ essentially 'cherry-picked' the treating physician's medical opinion by finding all of the doctor's conclusions to be 'well supported by the evidence' except the lone aspect of the medical opinion that would require a finding that the plaintiff was disabled"); *Smith v. Comm'r of Soc.*

---

[5] This is not to say that the ALJ must accept Dr. Walker's assessed limitations, only that the ALJ failed to sufficiently explain the basis of her decision to reject Dr. Walker's opined time off-task and absentee rate. *See Drozdowski v. Colvin*, 2016 WL 5402698, *8 (W.D.N.Y. 2016) ("[t]here may be reasons to discount [the treating physician's] opinion or to give greater weight to other conflicting testimony and opinion evidence in the record, but the ALJ erred by failing to specifically state those reasons").

*Sec.*, 2011 WL 6372792, *10 (D. Vt. 2011) (ALJ committed legal error by rejecting doctor's opinion that claimant would be absent from work more than four days per month; "the ALJ was not free to ignore an opinion from a treating physician").

In sum, because the ALJ failed to provide "good reasons" for rejecting plaintiff's treating physician's opinion as to plaintiff's time off-task and likely rate of absenteeism (limitations which, if credited, would be work preclusive), I find that remand is warranted. *See Halloran*, 362 F.3d at 33 ("[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

      B.    **Plaintiff's Remaining Contentions**

In light of my determination that the ALJ failed to comply with the treating physician rule, I decline to reach plaintiff's contention that the ALJ's mental RFC determination is not supported by substantial evidence. *See*, *e.g.*, *Drozdowski v. Colvin*, 2016 WL 5402698 at *8 (declining to reach plaintiff's remaining contentions where remand was warranted based on the ALJ's failure to comply with the treating physician rule); *Erb v. Colvin*, 2015 WL 5440699 at *15 (declining to evaluate whether ALJ erred in assessing plaintiff's RFC or credibility where ALJ erred in evaluating opinion of plaintiff's treating physician, thus warranting remand on that basis).

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **DENIED**, and plaintiff's motion for judgment on the pleadings

**(Docket # 8)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 7, 2021